Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| WILBERT HERNÁNDEZ CARABALLO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400374 | *REVISIÓN JUDICIAL*<br>Procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.:<br>2017-12-0327<br><br>Sobre: Traslado |
|---|---|---|

Panel integrado por su presidenta, la Jueza Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Alvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante nos Wilbert Hernández Caraballo ("señor Hernández" o "Recurrente") mediante una *Solicitud de Revisión Judicial* presentada el 12 de julio de 2024. Nos solicita que revoquemos la *Resolución y Orden Final* que se dictó el 11 de junio de 2024 y se notificó el 12 de junio del mismo año por la Comisión Apelativa de Servicio Público ("CASP" o "agencia recurrida"). Por virtud del aludido dictamen, la CASP archivó con perjuicio la *Apelación* presentada por el Recurrente, por incumplimiento de varias órdenes emitidas por la agencia recurrida, a tenor con el Artículo III del Reglamento Procesal Núm. 7313 de la CASP y la Sección 3.21 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, infra.*

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen recurrido.

### I.

Conforme se desprende del expediente administrativo, el 15 de diciembre de 2017, el señor Hernández presentó una *Solicitud de*

Número Identificador

SEN(RES)2024_____

*Apelación (por derecho propio*) ante la CASP.[1] En esta, el Recurrente, quien se identificó como empleado de carreara del Departamento de Corrección y Rehabilitación ("DCR"), impugnó el traslado que la aludida agencia le había notificado mediante una carta con fecha de 7 de noviembre de 2017. Según reza la referida comunicación, al señor Hernández se le trasladó para prestar servicios a la Institución Regional Metropolitana 308/448 de Bayamón. No obstante, el Recurrente esbozó que dicha acción era un "traslado oneroso e injustificado y discriminatorio". Por ello solicitó que lo devolvieran a la institución donde laboraba previo al traslado y se le indemnizara los gastos incurridos.

Tras el DCR presentar su alegación responsiva, el 18 de diciembre de 2018, la CASP ordenó a las partes a que, conjuntamente, presentaran un informe de conferencia con antelación a vista pública en un término de veinte (20) días calendario. Luego de varios trámites procesales, el 1 de marzo de 2019, la CASP emitió una *Orden* mediante la cual informó que, al atender la *Moción Informativa y Presentación del Informe de Conferencia con Antelación a Vista Pública* presentada por el DCR el 14 de febrero de 2019, dio la misma por cumplida. Sin embargo, en esa misma *Orden,* la agencia recurrida reseñó que el señor Hernández había presentado un *Informe de Conferencia con Antelación a Vista Pública,* el 27 de febrero de 2019, pero únicamente tomó conocimiento sobre este asunto. Consecuentemente, le ordenó al Recurrente a que presentara una enmienda a su informe e indicara las leyes y reglamentos aplicables a la controversia.

Así pues, el 1 de abril de 2019, la CASP le concedió veinte (20) días al Recurrente para que mostrara causa por la cual no se le

---

[1] En el presente caso, haremos alusión al contenido de los documentos contenidos en la Copia Certificada del Expediente Administrativo de la CASP en el caso 2017-12-0327.

debía imponer una sanción de quinientos dólares ($500.00) por incumplir con la *Orden* de 1 de marzo de 2019. Subsiguientemente, el 23 de abril de 2019, la CASP le impuso la referida sanción económica por el incumplimiento. El 31 de mayo de 2019, la CASP emitió otra *Orden* en la cual, tomó conocimiento y daba por cumplido la orden, ya que, el 29 de marzo de 2019, el Recurrente presentó su *Informe de Conferencia con Antelación a Vista Pública.*

Transcurrido un tiempo, el 14 de julio de 2021, la CASP emitió *Orden* mediante la cual informó que el 7 de junio de 2019 se había pautado una vista y que celebrada la misma, ninguna de las partes compareció. En ese sentido, ordenó a ambas partes a que mostraran causa por la cual no se le debía imponer sanciones económicas. Acto seguido, el 30 de septiembre de 2021, la CASP emitió otra *Orden.* En esta destacó que ambas partes alegaron que no pudieron comparecer a la vista pautada por problemas en el calendario. Ante esto, se señaló una vista para el 7 de junio de 2022. Sin embargo, dicha vista fue dejada sin efecto y se recalendarizó para el 4 de agosto de 2022.

Llegada la fecha, el 4 de agosto de 2022, la CASP celebró finalmente la vista en la cual comparecieron las partes. Culminada la misma, la CASP emitió una *Orden* que se notificó el 5 de agosto de 2022. En ella, se le concedió un término de treinta (30) días al Recurrente para que anunciara representación legal. Del mismo modo, se le concedió un término de setenta y cinco (75) días para que ambas partes se reunieran y atendieran una serie de asuntos pertinentes al caso y, tras esta conferencia, **las partes tendrían un término de diez (10) días para presentar un informe de conferencia con antelación a vista pública**, la cual debía presentarse en conjunto. En cumplimiento con lo ordenado, el 9 de diciembre de 2022, el Recurrente presentó una *Moción Anunciando Representación Legal.*

Transcurrido un tiempo, el 31 de enero de 2023, la CASP emitió una *Orden* en la cual le requirió a las partes a que mostraran causa por la cual no se le debía imponer una sanción de quinientos dólares ($500.00) por incumplir con la *Orden* del 5 de agosto de 2022. El 21 de febrero de 2023, el Recurrente presentó una *Solicitud para que se Conceda a las Partes Término Adicional para Auscultar Posibilidad de Acuerdo Transaccional*. En resumen, informó que las partes ya habían sometido un informe de conferencia de antelación a vista pública de manera separada. Esbozó que la representación legal de las partes había tenido la oportunidad de dialogar sobre la posibilidad de materializar un acuerdo por lo cual, solicitó un término de treinta (30) días para informar si en efecto, dicho acuerdo se materializó. Igualmente, esgrimió que, de vencerse el término solicitado sin llegar a algún acuerdo, solicitaría un término adicional de 10 días para someter el informe requerido por la CASP.

No empece a lo anterior, el 27 de febrero de 2023, la CASP emitió otra *Orden* en la cual le impuso una sanción de quinientos dólares ($500.00) a las partes por incumplir con la *Orden* del 5 de agosto de 2022. Tras esto, el 7 de marzo de 2023, el señor Hernández presentó una *Solicitud de Reconsideración de Orden imponiendo el Pago de Sanciones*. En esta, adujo que había presentado una moción 27 de febrero de 2023 y reiteró el contenido de esta. Sostuvo que dicha moción nunca fue resuelta. Además, enfatizó que el Recurrente no ha incumplido con ninguna *Orden* de la CASP pues había sostenido reuniones con el DCR para tratar de llegar a algún acuerdo.

Por su parte, el 11 de septiembre de 2023, el DCR presentó *Moción para Mostrar Causa y de Prorroga*, en la cual explicó que dicha parte no tenía conocimiento de la *Orden* de 5 de agosto de 2022, por lo que se le solicitó que se le notificara nuevamente dicha *Orden* y se le concediera un término de veinte (20) días para cumplir

con la misma. Atendido estos escritos, el 17 de octubre de 2023, la CASP emitió una ***Orden* en la cual tomó conocimiento de las mociones presentadas por las partes y les concedió treinta (30) días adicionales para presentar el informe ordenado el 5 de agosto de 2022 con el apercibimiento de las consecuencias del incumplimiento de la directriz**.

Empero, el **4 de abril de 2024**, la CASP emitió una ***Orden* en la cual explicó que, tras haber transcurrido el término de treinta (30) días sin que ninguna de las partes presentara documento alguno**, le ordenó a que mostraran causa por la cual no se le debía imponer una sanción económica de quinientos dólares ($500.00). Así las cosas, el **14 de mayo de 2024, la CASP le impuso una sanción económica a cada una de las partes por incumplir con la *Orden* del 5 de agosto de 2022.**

Finalmente, el **11 de junio de 2024**, notificada el 12 de junio del mismo año, **la CASP emitió una *Resolución y Orden Final* en la cual desestimó con perjuicio el pleito por el incumplimiento reiterado de las ordenes de la agencia recurrida**.

Inconforme, el 12 de julio de 2024, el Recurrente compareció ante este foro y formuló los siguientes señalamientos de error:

> Erró la Honorable Comisión en su Resolución al no notificar adecuadamente al apelante, ni a su representación legal, sus órdenes dictadas en 5 de abril de 2024 y 14 de mayo de 2024;
>
> Erró la Honorable Comisión al imponer a la parte apelante la sanción económica de quinientos dólares ($500.00) por el incumplimiento con la Orden del 5 de agosto de 2022 sin haber considerado ni resuelto las mociones en cumplimiento de orden oportunamente presentadas por la parte apelante en 21 de febrero de 2023 y en 7 de marzo de 2023;
>
> Erró la Honorable Comisión al no tomar en consideración, e ignorar y obviar por completo en su Resolución, las mociones en cumplimiento de orden oportunamente presentadas por la parte apelante en 21 de febrero de 2023 y en 7 de marzo de 2023;
>
> Erró la Honorable Comisión al incidir en su deber de adjudicar casos, desestimando con perjuicio la Apelación ante su consideración al aplicar inflexiblemente requisitos de forma, tales como la presentación de manera conjunta del Informe de Conferencia con antelación a la vista pública, cuando 1) obra en autos que desde mayo de 2019 las partes proveyeron la información que se requiere en dicho Informe, si bien lo hicieron de forma separada; 2) las partes no

expresaron que harían cambios a sus respectivas porciones del Informe; y 3) nada impedía la continuación de los procedimientos con el señalamiento de la vista pública

El 17 de julio de 2024, esta Curia emitió *Resolución* en la que, entre otros asuntos, le concedió un término de treinta (30) días para que el DCR expusiera su oposición al recurso. Igualmente, el 31 de julio de 2024, esta Curia emitió *Resolución* en la que se le concedió diez (10) días a la CASP para elevar copia certificada del expediente administrativo. En cumplimiento con lo ordenado, el 7 de agosto de 2024, la agencia recurrida presentó un escrito intitulado *Comparecencia Especial en Cumplimiento de Resolución*, mediante el cual presentó una copia certificada del expediente del caso. Vencido el término para acudir a esta Curia, el DCR no compareció ante nos por lo cual resolveremos la presente controversia sin el beneficio de su comparecencia.

## II.

### A. *Revisión de las determinaciones administrativas*

El Artículo 4.006 de la *Ley de la Judicatura de Puerto Rico*, Ley Núm. 22 de agosto de 2003, según enmendada, ("Ley de la Judicatura"), dispone que el Tribunal de Apelaciones tiene competencia para revisar, mediante un recurso de revisión judicial, "las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". 4 LPRA sec. 24u. Asimismo, la precitada Ley establece que el procedimiento de revisión judicial se llevará a cabo conforme a las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38 de 30 de junio de 2017, según enmendada ("LPAU"), 3 LPRA sec. 9601 *et seq.* Esta última establece, en su Sección 4.2, que la revisión judicial de las determinaciones administrativas están sujeta al cumplimiento con dos requisitos: (i) la parte adversamente afectada por la orden o resolución haya agotado los remedios provistos por la agencia y (ii) **que la orden o resolución sea final, y no**

**interlocutoria**. (Énfasis nuestro). 3 LPRA sec. 9672. Véase, además, *AAA v. UIA*, 199 DPR 638, 657 (2018).

Nuestro Tribunal Supremo ha expresado que:

> Aunque la LPAU no provee una definición puntual para lo que constituye " 'orden, resolución o providencias adjudicativas finales" — contrario a lo que ocurre con otros términos—, sí se provee una descripción de lo que debe contener este tipo de dictamen.[11] A saber, incluir y exponer de forma separada "determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o por cualquier otro funcionario autorizado por ley". *AAA v. UIA, supra,* págs. 657-658.

No empece que la LPAU establece la definición específica del término orden o resolución final, la misma dispone claramente en la Sección 3.14 los requisitos que debe contener. 3 LPRA sec. 9654. Además, el Tribunal Supremo ha sido enfático y ha reiterado que una orden o resolución final será "se trata de aquella determinación de la agencia administrativa que pone fin a los procedimientos en un foro determinado y tiene un efecto sustancial para las partes". *AAA v. UIA, supra.* En vista de lo anterior, **si no se recurre de una orden o resolución final, el Tribunal de Apelaciones carece de jurisdicción y está impedido de revisar la decisión administrativa.**

### B. Desestimación por Incumplimiento de Órdenes Administrativas

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.* ("LPAU"), provee para que las agencias administrativas puedan desestimar querellas como sanción por incumplimiento de sus órdenes en el proceso adjudicativo. Específicamente, faculta a la agencia para solicitar a las partes que muestren causa por la cual no se les debe imponer sanciones por incumplir con la reglamentación de la agencia "con cualquier orden del jefe de la agencia, del juez

administrativo o del oficial examinador . . .". 3 LPRA sec. 9661(a).

Así, ejerciendo su facultad cuasi judicial, una agencia podrá:

> Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y **de haberlas notificado a la parte correspondiente,** dicha parte continúa en su incumplimiento de las órdenes de la agencia. (Énfasis suplido) 3 LPRA sec. 9661(b).

Por otro lado, el Reglamento Procesal de la Comisión, Reglamento Núm. 7313-2007 también faculta a la Comisión a desestimar la causa

> Cuando cualquiera de las partes o ambas incumplan injustificadamente una orden de la Comisión o del Oficial Examinador, luego de que se ordenare que muestre causa por la cual no deba imponérsele una sanción, y luego de habérsele impuesto una sanción económica por incumplimiento de orden a favor de la agencia, de cualquier parte o de su abogado, por cada imposición separada. Artículo III, Reglamento Núm. 7313-2007.

Por tanto, la Comisión está facultada para ejercer su discreción en ese aspecto siempre que la desestimación se produzca solo luego de haberse: (1) solicitado mostrar causa e (2) impuesto sanción, (3) sin que se remedie el incumplimiento.

Por último, la Sección 2.8 del Reglamento Núm. 7313-2007 establece lo siguiente:

> Una vez las partes hayan comparecido mediante representación legal, toda notificación se hará al abogado o abogada en lugar de a la parte, **excepto en aquellas órdenes emitidas de muestre causa o imposición de sanción relacionadas al incumplimiento de órdenes de las partes representadas por abogados, en cuyo caso se deberá notificar también a la parte a su dirección de récord.** (Énfasis suplido)

### III.

Expuesto el marco jurídico y ponderados los autos, procedemos a resolver. El señor Hernández discute sus cuatro señalamientos de error de manera conjunta, por lo cual evaluaremos los mismos de esa forma. En síntesis, la controversia trabada ante nuestra consideración en el caso de marras se limita a si la CASP incurrió en un abuso de discreción o error de derecho al desestimar la *Apelación* instada por el Recurrente a consecuencia del

incumplimiento de las partes con varias órdenes dictadas por la agencia recurrida. Veamos.

Surge del expediente administrativo que, el 5 de agosto de 2022, la CASP emitió una *Orden* para que, entre otras cosas, las partes de epígrafe se reunieran y presentaran en conjunto un *Informe de Conferencia con Antelación a Vista Pública* (*Informe*). Transcurrido el término que dispuso la agencia recurrida, el 31 de enero de 2024, la CASP les solicitó a las partes que mostraran causa por la cual no debía imponerle sanciones por el incumplimiento con la *Orden* emitida el 5 de agosto de 2022. El 27 de febrero de 2023 la CASP sancionó a las partes por el referido incumplimiento. No obstante, consta en el expediente que, el 21 de febrero de 2023, el Recurrente había presentado una moción a los efectos de solicitar un término adicional para auscultar la posibilidad un acuerdo transaccional y de no llegar a dicho acuerdo, entonces presentar el *Informe* solicitado. Aun así, la CASP sancionó a las partes por el incumplimiento mediante una *Orden* el 27 de febrero de 2023.

Luego de que el Recurrente presentara una moción de reconsideración, y el DCR una moción mostrando causa, el 17 de octubre de 2023, la agencia recurrida tomó conocimiento de dichos escritos y volvió a pedirles a las partes la presentación del *Informe*. No cabe duda, de que, si bien la CASP no resolvió en los méritos las mociones presentadas por las partes, tampoco se puede obviar que estas venían obligadas a acatar la directriz de la agencia. Sin embargo, transcurrido el término concedido por la CASP, las partes no presentaron documento alguno. En ese sentido, el **4 de abril de 2024** la CASP emitió una *Orden* para que mostraran causa por la cual no debía imponerles sanciones económicas y posteriormente, **14 de mayo de 2024,** la agencia recurrida emitió otra *Orden* imponiendo las sanciones. Finalmente, la CASP dictó *Resolución y*

*Orden Final* desestimando el pleito por el reiterado incumplimiento de las partes.

Ahora bien, de un examen del expediente administrativo, nos percatamos que la *Orden* emitida el **4 de abril de 2024** se notificó **únicamente a los abogados y no directamente a las partes**, contrario a las subsiguientes ordenes, entiéndase la *Orden* de **14 de mayo de 2024** y la *Resolución y Orden Final* de **11 de junio de 2024**, las cuales si fueron notificadas tanto a las partes como a su representación legal.

La sección 3.21 de la LPAU es diáfana en cuanto a cuando procede la desestimación de un recurso en los foros administrativo como medida sancionadora. Así, esta legislación especial provee que una agencia podrá: [o]rdenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y **de haberlas notificado a la parte correspondiente,** dicha parte continúa en su incumplimiento de las órdenes de la agencia.

De igual manera, la Sección la Sección 2.8 del Reglamento Núm. 7313-2007 de la CASP dispone las órdenes emitidas para mostrar causa o aquellas que imponga sanciones relacionadas al incumplimiento de órdenes de las partes representadas por abogados, **se deberá notificar también a la parte a su dirección de récord.** En otras palabras, cónsono con lo que ha establecido nuestra jurisprudencia, la severa sanción de la desestimación del pleito, solamente podrá imponerse "**después que la parte haya sido debidamente informada** y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida". *Maldonado v. Srio. de Rec. Naturales*, 113 DPR 494, 498, (1982).

A tono con todo lo previamente esbozado, es menester recalcar que, en el caso de autos, la CASP incumplió con su obligación de notificar a las partes de la *Orden* de 4 de abril de 2024. La aludida

*Orden* no solo solicitaba que las partes mostraran causa por la cual no debían imponerse sanciones, sino que también incluía el apercibimiento sobre las consecuencias de incumplir con la directriz de la agencia recurrida. Toda vez que, que la CASP no notificó adecuadamente al señor Hernández, esta estaba impedida de desestimar el pleito por virtud de la sección 3.21 de la LPAU. Por consiguiente, corresponde revocar la determinación recurrida y devolver el caso para la continuación de los procedimientos.

## IV.

Por los fundamentos antes expuestos, **revocamos** la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones